<div style="text-align:left; font-weight:bold; font-style:italic;">United States District Court<br>For the Northern District of California</div>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARTEMIO M. ARROYO,

             Petitioner,

  v.

RANDY GROUNDS, Warden,

             Respondent.

_____/

No. C 10-01007 SBA (PR)

**ORDER GRANTING PETITIONER
LEAVE TO FILE A SUR-REPLY;
GRANTING RESPONDENT'S MOTION
TO DISMISS; AND DENYING A
CERTIFICATE OF APPEALABILITY**

(Docket nos. 5, 8)

**INTRODUCTION**

Petitioner, Artemio M. Arroyo, a state prisoner incarcerated at the Correctional Training Facility (CTF), has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a 2009 disciplinary decision. Before the Court is Respondent's motion to dismiss the petition on the ground that it fails to raise a federally cognizable habeas claim. Petitioner opposes the motion. Respondent filed a reply to the opposition. Petitioner then filed a motion for leave to file a sur-reply, and a proposed sur-reply. For the reasons discussed below, the Court GRANTS Petitioner leave to file a sur-reply, and GRANTS Respondent's motion to dismiss.

**BACKGROUND**

Petitioner is serving an indeterminate sentence of fifteen years to life imprisonment on a 1980 conviction for second-degree murder. At the time of the 2009 disciplinary decision at issue here, Petitioner had already served close to twenty-nine years of his sentence and thus was well beyond his minimum eligible parole date.

On February 21, 2009, Petitioner received a rules violation report (CDC-115) stemming from an incident at CTF. (Pet'r Ex. 1.) He was charged with "cheeking medication" or holding medication under his tongue instead of swallowing it. (<u>Id.</u>) On or about March 4, 2009, a disciplinary hearing was held on the CDC-115. (<u>Id.</u>) Petitioner was found guilty of the charge and was placed in Privilege Group C for a period of three months. (<u>Id.</u>) Because he was placed in Privilege Group C and pursuant to section 3044(f)(3) of Title 15 of the California Code of Regulations, Petitioner was:

1  allowed one-forth (1/4), the maximum monthly canteen draw as authorized by the
   director[;] No access to recreational or entertainment activities; Yard Access
2  limited to "C" status, (Monday/Wednesday/Friday from 1430 to 1530 hours); No
   family visits; No personal property packages; No accrual of excused time off
3  (E.T.O.); No telephone calls, only emergency telephone calls as determined by
   facility staff; . . . Showers limited to Mondays, Wednesdays and Fridays from 1030
4  hours to 1130 hours per Operations Manual #40; Counseled and Reprimanded.

5  (Id.)  There is no evidence that there was any other discipline imposed.

6         In his federal habeas petition, Petitioner claims that his due process rights were violated

7  during the 2009 disciplinary proceeding because the record contained insufficient evidence to

8  support a disciplinary finding of guilt.  (Pet. at 7.)  Petitioner also contends that the instant

9  disciplinary decision could adversely affect a future parole suitability hearing.  However, since he

10 received the 2009 CDC-115, Petitioner has not had such a hearing before the California Board of

11 Parole Hearings (BPH).

12        On August 25, 2010, the Court issued an Order to Show Cause directing Respondent to

13 answer the instant petition.  Respondent now moves to dismiss the petition on the grounds that

14 Petitioner's "challenge to the guilty finding fails to implicate a federally protected liberty interest."

15 (Mot. to Dismiss at 2.)  Respondent further argues that even if Petitioner could identify a protected

16 liberty interest, habeas jurisdiction is still lacking because the petition "challenges conditions of

17 confinement, rather than the validity or duration of his conviction."  (Id.)  Petitioner opposes the

18 motion, arguing again that because he is "subject to the authority of the [BPH] who will have the

19 ultimate say over whether [he] can be found suitable for parole and release[d] from prison," the 2009

20 CDC-115 "has an inevitable effect on the duration of his sentence."  (Opp'n at 3.)

21                                    **DISCUSSION**

22        Interests that are procedurally protected by the Due Process Clause may arise from two

23 sources -- the Due Process Clause itself and laws of the states.  See Meachum v. Fano, 427 U.S. 215,

24 223-27 (1976).  In the prison context, these interests are generally ones pertaining to liberty.

25 Changes in conditions so severe as to affect the sentence imposed in an unexpected manner

26 implicate the Due Process Clause itself, whether or not they are authorized by state law.  See Sandin

27 v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to

28 mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary

United States District Court

For the Northern District of California

2

United States District Court

For the Northern District of California

1  administration of psychotropic drugs)).  Here, Respondent argues that Petitioner's 2009 disciplinary

2  action did not involve a change so severe as to implicate the Due Process Clause itself.

3        Deprivations that are less severe or more closely related to the expected terms of

4  confinement may also amount to deprivations of a procedurally protected liberty interest, provided

5  that state statutes or regulations narrowly restrict the power of prison officials to impose the

6  deprivation and that the liberty in question is one of "real substance."  See Sandin, 515 U.S. at 477-

7  87.  An interest of "real substance" will generally be limited to freedom from restraint that imposes

8  "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or

9  "will inevitably affect the duration of [a] sentence."  Sandin, 515 U.S. at 484, 487.

10       In Sandin, the United States Supreme Court explained what does not qualify as an interest of

11  "real substance."  Sandin determined that the possible effect of a disciplinary decision on parole

12  consideration did not show that the disciplinary decision would inevitably affect the duration of the

13  plaintiff's sentence.  See id. at 487.  State law did not require "the parole board to deny parole in the

14  face of a misconduct record or to grant parole in its absence, . . . even though misconduct is by

15  regulation a relevant consideration . . . .  The decision to release a prisoner rests on a myriad of

16  considerations . . . .  The chance that a finding of misconduct will alter the balance is simply too

17  attenuated to invoke the procedural guarantees of the Due Process Clause."[1]  Id.  In sum, habeas

18  relief is available only if the challenged state action exceeds the sentence in such an unexpected

19  manner as to give rise to protection by the Due Process Clause of its own force, imposes an atypical

20  and significant hardship on the inmate in relation to the ordinary incidents of prison life, or will

21  inevitably affect the duration of the inmate's sentence.  Id. at 484, 487.

22       As mentioned above, upon being found guilty on the 2009 CDC-115, Petitioner was placed

23  in Privilege Group C for a three-month period.  As will be discussed below, under Sandin habeas

24  relief is unavailable to Petitioner unless the aforementioned punishment: (1) exceeds the sentence in

25  such an unexpected manner as to give rise to protection by the Due Process Clause of its own force;

26

27       [1]  Although Sandin's discussion pertained to statutes and regulations in Hawaii, California's
    statutes and regulations also permit the parole authority to consider a wide variety of factors in
28  deciding whether an inmate is suitable for parole.  See Cal. Penal Code §§ 3041, 3046; Cal. Code
    Regs. tit. 15, §§ 2280-2292.

1  (2) imposes an atypical and significant hardship on Petitioner in relation to the ordinary incidents of

2  prison life; or (3) will inevitably affect the duration of Petitioner's sentence.  See id.

**I.    Implicates Due Process Clause of its Own Force**

Petitioner's punishment of being placed in Privilege Group C for three months is not so severe a consequence to implicate the Due Process Clause of its own force.  Only those changes in condition so severe as to affect the sentence imposed in an "unexpected manner" implicate the Due Process Clause itself.  Id. at 484.  Here, Petitioner's three-month placement in Privilege Group C is a consequence far removed from more severe disciplinary actions, such as the administration of psychotropic drugs or being transferred to a mental hospital.  Id. (citing Washington, 494 U.S. at 221-22 and Vitek, 445 U.S. at 493).  The mere curtailment of an inmate's privileges for a three-month period does not rise to the level of becoming a change in condition so severe -- like those in Washington and Vitek -- that it affects Petitioner's sentence in an unexpected manner.  Because Petitioner cannot demonstrate that the finding of guilt at his disciplinary hearing affected his sentence in an "unexpected manner," the 2009 CDC-115 and the consequence of being placed in Privilege Group C for three months do not give rise to a due process claim.

**II.    Atypical and Significant Hardship**

Petitioner's disciplinary decision stemming from the 2009 CDC-115 also fails to give rise to a due process claim because it did not result in an "atypical and significant hardship."  While States "may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (internal citations omitted).  In Sandin, the Supreme Court concluded that a prison disciplinary decision which resulted in one month of solitary confinement did not give rise to a due process claim because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  Id. at 476, 486.

United States District Court
For the Northern District of California

4

United States District Court

For the Northern District of California

1       The prisoner in <u>Sandin</u> was confined to solitary confinement for twenty-three hours per day,

2   without any opportunity to interact with other inmates.  <u>See id.</u> at 494 (Brennan, J., dissenting).

3   Thus, he was also unable to experience any of the privileges that Petitioner in the present case

4   enjoyed -- albeit on a reduced basis -- upon being placed in Privilege Group C for three months.

5   Nevertheless, the Supreme Court found that this period of solitary confinement "did not exceed

6   similar, but totally discretionary, confinement in either duration or degree of restriction," and "did

7   not work a major disruption in [the prisoner's] environment."  <u>Id.</u> at 486.  In the present case, the

8   guilty finding at issue against Petitioner resulted in a less-extreme, three-month curtailment of

9   privileges upon being placed in Privilege Group C.  As explained above, Petitioner's ability to

10  purchase goods at the prison canteen was limited to one-fourth of the usual allowance; his yard

11  access and shower time were limited to three times per week; he could not receive personal property

12  packages, family visits, non-emergency telephone calls, or an accrual of excused time off; he was

13  not permitted to participate in recreational or entertainment activities; and he was counseled and

14  reprimanded.  These consequences, while inconvenient, do not significantly changed his

15  confinement.  Nor do they create an atypical and significant hardship in Petitioner's daily prison life.

16  Because significantly more restrictive disciplinary actions -- like those in <u>Sandin</u> -- failed to qualify

17  as an atypical and significant deprivation of a conceivable liberty interest, Petitioner fails to

18  establish that he suffered such a deprivation.

19  **III.**   **Inevitably Affects Duration of Sentence**

20      Finally, Petitioner argues that his 2009 CDC-115 will inevitably negatively influence his

21  chance of being found suitable for parole in the future.  In <u>Sandin</u>, the Court held that such a claim is

22  too speculative to give rise to the protections of the Due Process Clause.  "The decision to release a

23  prisoner rests on a myriad of considerations."  <u>Id.</u> at 487.  The Court concluded that a mere "chance

24  that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural

25  guarantees of the Due Process Clause."  <u>Id.; see also</u> <u>Meachum</u>, 427 U.S. at 228-29 (declining to

26  afford relief on the basis that petitioner's transfer record might affect his future confinement and

27  possibility of parole).  In sum, the impact of a disciplinary decision on a life inmate's future parole

28  decision is too speculative to say that the decision has the inevitable effect on the duration of

United States District Court

For the Northern District of California

1    confinement that is necessary for federal due process protections to attach.  Petitioner's present case

2    falls squarely within this conclusion; therefore, the Court finds his argument unavailing.  Moreover,

3    the Court notes that Petitioner filed a previous habeas action challenging a 2007 disciplinary

4    decision relating to a charge of resisting a peace officer.  See Case No. C 09-01745 SBA (PR).

5    Petitioner claimed the 2007 CDC-115 caused the BPH to deny him parole in 2007.  In an Order

6    dated September 30, 2010 in Case No. C 09-01745 SBA (PR), the Court determined that the

7    "available portion of the 2007 parole suitability hearing decision transcript ma[de] it clear that it was

8    not only the 2007 CDC-115 that caused the BPH to find Petitioner unsuitable for parole," stating:

> The BPH denied parole based on the nature of the commitment offense, Petitioner's
> lack of insight, his unstable social history based on gang affiliation, his insufficient
> participation in beneficial self-help and substance abuse programming, his
> disciplinary history that included a total of fifteen CDC-115s and ten counseling
> memoranda (CDC-128s), his negative psychological evaluation, his in-prison use of
> controlled substances, the need for firmer parole plans, and finally, the oppositions
> to parole from the District Attorney of San Joaquin County as well as the Lodi
> Police Department.  (Opp'n, Ex. A at A1-A6.)  A BPH commissioner stated that
> Petitioner needed further "documented self-help in order to face, discuss,
> understand, and cope with stress and anger in a non-destructive manner."  (Id. at
> A6.)  The commissioner also stated: "Until progress is made, this prisoner continues
> to be unpredictable and a threat to others."  (Id.)  The 2007 denial was a four-year
> denial.  The BPH specifically determined that it was "not reasonable to expect that
> parole would be granted at a hearing during the next four years."  (Id. at A7.)  The
> commissioner listed the reasons for that decision as the commitment offense,
> Petitioner's disciplinary history, his prior gang affiliations, the negative
> psychological evaluation, and his need for further programing.  (Id. at A7-A8.)

18   (Sept. 30, 2010 Order in Case No. C 09-01745 SBA (PR) at 2.)

19        While prison misconduct is one of many factors taken into account by the parole board when

20   determining suitability for release under section 2402(c)(6) of Title 15 of the California Code of

21   Regulations, no statute or regulation requires that parole be denied solely on the basis of a

22   disciplinary violation.  Rather, as evident from Petitioner's 2007 parole suitability hearing, the BPH

23   evaluates "all relevant, reliable information available" in making such decisions.  Cal. Code Regs.

24   tit. 15, § 2402(b).  The BPH's 2007 decision denying parole indicated that there were numerous

25   reasons for the four-year denial.  Therefore, the Court found that Petitioner "had no federally

26   protected right to due process" based on his challenge to the 2007 CDC-115, and thus dismissed his

27   previous case.

28

In the present case, there was no parole suitability hearing held for Petitioner after his 2009 disciplinary hearing.  As explained above, any effect that the 2009 CDC-115 may have on a future parole hearing is merely speculative.  Petitioner's claim is unpersuasive because if the speculative impact on a parole hearing alone were sufficient to establish a protected liberty interest in disciplinary proceedings, then "all prison disciplinary decisions would be reviewable because all disciplinary decisions, no matter how minor, have the potential to adversely impact parole decisions."  In re Johnson, 176 Cal. App. 4th 290, 298 (2009).  Regardless, Petitioner will have a number of procedural protections at future parole suitability hearings to explain the circumstances behind the rule violation report.  Sandin, 515 U.S. at 487; see Greenholtz v. Inmates of Neb. Pen. & Corr. Complex, 442 U.S. 1, 16 (1979) (due process requires that inmate have opportunity to be heard at parole suitability hearing).  Furthermore, the Court has previously found no federally protected right to due process as to Petitioner's previous challenge involving his 2007 CDC-115, even though the 2007 CDC-115 of resisting a peace officer posed a more significant concern for the BPH compared to the instant 2009 CDC-115 of "cheeking medication."  Therefore, under the reasoning of Sandin, Petitioner has no protected liberty interest and no federal right to due process based on his challenge to the 2009 CDC-115.  Accordingly, without a federal right to due process, Petitioner cannot state a claim for a due process violation.

**IV.    Whether to Pursue Claim in a Civil Rights or Habeas Action**

If the speculative impact on the parole consideration alone were sufficient to establish a protected liberty interest in disciplinary proceedings -- which the Court has just determined it does not -- the claim would belong in a civil rights rather than a habeas action.

"'Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983.  Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.'"  Hill v. McDonough, 547 U.S. 573, 579 (2006) (quoting Muhammad v. Close, 540 U.S. 749, 750 (2004)).  "An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983."  Id.

7

**United States District Court**
For the Northern District of California

1    Traditionally, challenges to prison conditions have been cognizable only via a § 1983 civil

2    rights action, while challenges implicating the fact or duration of confinement must be brought

3    through a habeas petition.  Docken v. Chase, 393 F.3d 1024, 1026 (9th Cir. 2004).  The two

4    remedies are not always mutually exclusive, however.  Id. at 1031; see also id. at 1027 n.2.  The

5    Ninth Circuit has permitted habeas to be used to assert claims that are "likely to accelerate"

6    eligibility for parole, even though success in such cases would not necessarily implicate the fact or

7    duration of confinement.  Id. at 1028 (citing Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), and

8    Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004)).  Though

9    rich with broader pronouncements to the effect that § 1983 and habeas overlap in many respects, the

10   actual holding in Docken was somewhat narrower: "when prison inmates seek only equitable relief

11   in *challenging aspects of their parole review* that, so long as they prevail, could potentially affect the

12   duration of their confinement, such relief is available under the federal habeas statute."  Docken, 393

13   F.3d at 1031 (emphasis added).

14   In Ramirez, the Ninth Circuit held that "habeas jurisdiction is absent, and a § 1983 action

15   proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's

16   sentence."  334 F.3d at 859.  The district court had dismissed a prisoner's § 1983 complaint

17   challenging disciplinary decisions as barred by Heck because the prisoner had not yet had the

18   disciplinary sentence invalidated.  Id. at 853.  The appellate court reversed, concluding that the

19   plaintiff could challenge the decision under § 1983 because the Heck "rule does not apply to § 1983

20   suits challenging a disciplinary hearing or administrative sanction that does not affect the overall

21   length of the prisoner's confinement."  Id. at 858.

22   The foregoing cases do not answer the question of whether there is a claim for a violation of

23   a constitutional right, such as a right to due process.  Rather, they assume the existence of the right

24   and concern which kind of action -- habeas or § 1983 -- to use to pursue a claim based on the

25   violation of that right.

26   As discussed above, Petitioner does not challenge some aspect of his parole review, but

27   instead a separate disciplinary decision that may in turn have some effect on some aspect of his

28   future parole review.  The case that most suggests such a claim can be brought in habeas is Docken;

United States District Court

For the Northern District of California

1   however, that case is distinguishable because its holding was limited to cases in which "inmates seek

2   only equitable relief in challenging aspects of their parole review." 393 F.3d at 1031. Petitioner is

3   more analogous to the plaintiff in Ramirez, in that he is challenging a disciplinary decision that will

4   not necessarily shorten the sentence and therefore should be pursued in a § 1983 action because

5   habeas jurisdiction is absent. Although Docken and Ramirez are helpful in ascertaining whether a

6   challenge to a disciplinary decision would have to be brought in a § 1983 action rather than habeas,

7   the Court reiterates that reliance on the reasoning of cases deciding one question (whether a claim

8   should be pursued in habeas versus civil rights) to determine the answer to a different question

9   (whether there is a federal due process right) only confuses the analysis. For example, Docken

10  seems to suggest that there need only be a potential (rather than an inevitable) effect on the duration

11  of the sentence for habeas relief to be available. However, the petitioner in Docken did not assert a

12  due process claim but instead asserted an Ex Post Facto Clause claim based on the parole board's

13  refusal to provide him with annual review of his parole suitability. See Docken, 393 F.3d at 1026;

14  see id. at 1025 (reversing district court's dismissal of the petition as not proper under habeas).

15  Docken is not helpful on the question of whether Petitioner can state a due process claim because

16  Sandin's requirement of an inevitable effect on the sentence is for a due process claim, not for other

17  kinds of constitutional claims, such as ex post facto claims. Ramirez is not helpful in determining

18  whether Petitioner can state a due process claim because, unlike Petitioner, the plaintiff in Ramirez

19  received a twenty-four-month administrative segregation term, which could amount to an atypical

20  and significant hardship pursuant to Sandin. See Ramirez, 334 F.3d at 860-61.

21         In sum, Petitioner cannot state a claim for a violation of his rights under the Due Process

22  Clause because the 2009 prison disciplinary decision did not implicate a federally protected liberty

23  interest. The decision led to Petitioner being placed in Privilege Group C, but that placement will

24  not inevitably affect the duration of confinement for this indeterminate-sentenced inmate whose

25  parole suitability will depend on a "myriad of circumstances." Furthermore, this is not a matter of

26  whether the claim ought to be pursued in civil rights rather than in habeas, but rather whether there

27  is a due process claim at all. The Court concludes there is not. This action must be dismissed.

28  Accordingly, Respondent's motion to dismiss is GRANTED.

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Petitioner's motion for leave to file a sur-reply (docket no. 8), and GRANTS Respondent's motion to dismiss (docket no. 5). This action is DISMISSED for failure to state a claim upon which relief may be granted.

Further, a certificate of appealability is DENIED. Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk of the Court shall enter judgment, terminate all pending motions and close the file.

This Order terminates Docket nos. 5 and 8.

IT IS SO ORDERED.

DATED: September 30, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

**United States District Court**
For the Northern District of California

1

2

3 UNITED STATES DISTRICT COURT

4 FOR THE

5 NORTHERN DISTRICT OF CALIFORNIA

6

7

8 ARTEMIO ARROYO,                                    Case Number: CV10-01007 SBA

9                    Plaintiff,               **CERTIFICATE OF SERVICE**

10    v.

11 RANDY GROUNDS et al,

12                    Defendant.
   _____/

13

14 I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
   Court, Northern District of California.

15
   That on October 7, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
16 copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
   envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
17 located in the Clerk's office.

18

19

20 Artemio  Arroyo C-20149
   CTF-Central
21 P.O. Box 689
   Soledad,  CA 93960-0689
22
   Dated: October 7, 2011
23
                                              Richard W. Wieking, Clerk
                                              By: LISA R CLARK, Deputy Clerk
24

25

26

27

28